UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 23-24312-CIV-MORENO**

ALCINA DENISE SCOTT,

        Plaintiff,

v.

MIAMI-DADE COUNTY,
JOVAN PEREZ, and
JONATHAN MENOCAL

        Defendants.

                             /

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND ORDER DENYING ALL PENDING MOTIONS AS MOOT

THIS CAUSE came before the Court upon Defendants' Motion for Summary Judgment. Alcina Scott sued two police officers and Miami-Dade County alleging federal civil rights violations and state claims stemming from her arrest on September 16, 2020. The Court grants summary judgment in favor of Defendants, holding that the officers are entitled to qualified immunity on Counts III, IV, and IV-B. The Court further finds that the County is entitled to qualified immunity on Count V. The Court also finds that because Ms. Scott does not provide sufficient case law to establish that Detective Perez was on notice that his conduct was unlawful, he is entitled to qualified immunity as to Count I, false arrest. Likewise, the County is entitled to qualified immunity as to Count VII, state false arrest.

### I.      Factual Background

This seven-count Complaint is a civil rights action on behalf of Plaintiff Alcina Scott, who alleges her rights under the Fourth and Fourteenth Amendments were violated when she was seized and subjected to "excessive force" by Miami-Dade County police officers. She brought this action

for money damages pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth and Fourteenth Amendments to the U.S. Constitution, and under the laws of the State of Florida against Miami-Dade County and police officers Jovan Perez and Jonathan Menocal. Ms. Scott alleges that while she was playing video games at the property located at 9203 NW 22nd Ave, Miami, FL 33147, Detective Perez and Officer Menocal arrested her without probable cause and used excessive force when doing so.

Unbeknownst to Ms. Scott, Miami-Dade police officers were conducting a narcotics investigation in reference to this property. In the early evening, dozens of Miami-Dade police officers executed a search warrant on the property. A Florida state Circuit Court judge authorized the police to search the property after determining there was sufficient evidence that the sale of narcotics was taking place there. The warrant authorized the police to search the premises and seize evidence including illicit controlled substances, drug paraphernalia, firearms, currency, and information relevant to proving the identity of recent occupants.

While playing video games, Ms. Scott heard a banging noise at the front door of the property, which she claims resembled the sound of gunfire. Out of fear, she dropped down to the floor by a pool table inside and began screaming. Subsequently, one of the employees pressed the buzzer to open the front door for Miami-Dade police officers. The officers stood outside the door and yelled at everyone in the property to "come outside!" Ms. Scott got off the floor, raised her hands above her head, and went outside. She claims to be the first person to step outside in response to the officers' instructions.

Immediately after stepping foot outside the property, Officer Menocal allegedly grabbed Ms. Scott and threw her to the ground, causing Ms. Scott to bang her knees on the asphalt. As a result, Ms. Scott's phone, car keys, and $70 in cash fell out of her hand. The officers, including

2

Officer Menocal, restrained her hands behind her back with zip ties. The officers then picked her up, walked her to another area of the parking lot, and put her on the ground. In total, four individuals, two of whom were employees, were taken out of the property and placed on the ground outside. Ms. Scott was not an employee but a patron.

The officers conducted a search of Ms. Scott to include a pat down and a search of her clothing and pockets. Detective Perez conducted a search of Ms. Scott's vehicle without a warrant and seized $675 in cash that belonged to her. She did not consent to Detective Perez's search of her vehicle. The officers placed her in a marked patrol car along with another woman who was also in the property. During their search, the officers found 68 grams cocaine within two plastic bags concealed in a toilet tank in the bathroom. Detective Perez arrested Ms. Scott for trafficking in cocaine, in violation of Fla. Stat. § 893.135(1)(b)(1), and for knowingly being in possession of a place with the knowledge that it will be used for the purpose of trafficking in a controlled substance, in violation of Fla. Stat. § 893.135(1)(2). After he arrested her, Detective Perez searched Ms. Scott's vehicle and recovered $575. He also recovered the $70 she had been holding and $1,011 from behind a counter that was in quick-count bundles, consistent with street-level narcotics sales. Ms. Scott was the only individual arrested. Before her arrest, no officers asked any questions not conducted an investigation..

The day after her arrest, Ms. Scott appeared in court for her first appearance hearing. The judge released her on her own recognizance after finding that there was no probable cause within the four corners of the arrest affidavit for the offenses for which she was arrested. Several weeks later, the State of Florida dismissed all charges against Ms. Scott.

Ms. Scott argues that as a direct and proximate cause of the defendants' conduct, she suffered the following injuries and damages: (1) violation of her constitutional rights under the

Fourth and Fourteenth Amendments and (2) loss of liberty, physical pain and suffering, psychological and emotional trauma and suffering, humiliation, embarrassment and damage to reputation—all of which she alleges continue to this day and are likely to continue into the future. Further, she states that the actions of the defendant officers violated her freedom from unlawful seizure and freedom from excessive force.

## II. Claims

The seven counts in this claim are as follows: (I) 42 U.S.C. § 1983 Fourth Amendment Violation against Detective Perez and Officer Menocal individually (Unlawful Seizure Without Legal Process/False Arrest), (II) 42 U.S.C. § 1983 Fourth Amendment Violation against Detective Perez and Officer Menocal individually (Unlawful Seizure With Legal Process/Malicious Prosecution), (III) 42 U.S.C. § 1983 Fourth Amendment Violation against Detective Perez and Officer Menocal Individually (Excessive Force), (IV) 42 U.S.C. § 1983 Fourth Amendment Violation against Detective Perez Individually (Unlawful Search and Seizure), (IV-B) State Tort of Battery against Officer Menocal, Individually, (V) State Tort of Battery against Miami-Dade County, and (VII)[1] State Tort of False Arrest against Miami-Dade County.

In Ms. Scott's Response to Defendants' Motion for Partial Judgment on the Pleadings, Ms. Scott agreed to the dismissal of Count I, False Arrest, as against Officer Menocal only. Furthermore, Ms. Scott agreed to the dismissal of Count II, Malicious Prosecution, in its entirety. Ms. Scott also agreed to dismiss Count III, Excessive Force, as to Detective Perez as Count III is subsumed into Count I. Lastly, Ms. Scott proceeded with the False Arrest claim against Miami-Dade County, Count VII, based on the actions of Detective Perez and not Officer Menocal.

---

[1] Although the numbering skips Count VI, the Court will keep the counts numbered as listed so as to not create any additional confusion.

Therefore, the remaining contested claims are the false arrest against Detective Perez (Count I), the excessive force claim against Officer Menocal under federal law (Count III), the Fourth Amendment unlawful search and seizure claim against DetectivePerez (Count IV), the state battery claim against Officer Menocal (Count IV-B), the state battery claim against Miami-Dade County (Count V), and the state false arrest claim against Miami-Dade County based on the actions of Detective Perez only (Count VII).

### III. Issues

Defendants move for summary judgment under Federal Rule of Civil Procedure 56, and argue that Officer Menocal and Detective Perez are entitled to qualified immunity from Ms. Scott's Fourth Amendment claims of excessive force, false arrest, and unlawful search. Defendants posit that Officer Menocal used reasonable force when detaining Ms. Scott and that Detective Perez had probable cause to arrest Ms. Scott and search her vehicle. Further, Defendants argue that neither Officer Menocal nor the county can be subject to liability under state law given that Defendants' actions were reasonable.

With regard to the false arrest and unlawful search claims, Ms. Scott responds that Defendants did not have arguable probable cause to arrest Plaintiff for any offense, and therefore, qualified immunity does not apply. As for the excessive force and state battery claims, Ms. Scott argues that the Defendants' actions were not a *de minimis* use of force because the force was disproportionate given the circumstances surrounding the arrest. Ms. Scott asserts that whether the force was proportional and whether the officers had arguable probable cause creates a genuine dispute of material fact, and as such, requests that the Court deny summary judgment.

## IV. Legal Standard

Fed. R. Civ. P. 56 provides, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to judgment as a matter of law.'" *See Alabama v. N. Carolina*, 560 U.S. 330, 344 (2010) (quoting Fed. R. Civ. P. 56(a)). The existence of some factual disputes between litigants will not defeat an otherwise properly ground motion for summary judgment; "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis added). Mere "metaphysical doubt as to the material facts" will not suffice. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The basic issue before the Court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251 (1986). The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992).

## V. Discussion

### A.  Count I: False Arrest as to Detective Perez

Defendants argue that Detective Perez is entitled to qualified immunity from Ms. Scott's false arrest claim because he had at least probable cause to arrest her. Plaintiff responds that probable cause did not exist, and therefore, Detective Perez violated Ms. Scott's constitutional

rights. Because the Court finds that Detective Perez was not on notice that he was violating an established constitutional right, Detective Perez is entitled to qualified immunity on this claim.

**Qualified Immunity Law**

Qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "In theory, this judge-made doctrine is designed to protect government officials from the consequences of their reasonable mistakes made in the exercise of their official duties." *Edger v. McCabe*, 84 F.4th 1230, 1235 (11th Cir. 2023) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (U.S. 2009)). A qualified immunity defense places the burden on the officers "to establish that they were acting within their discretionary authority." *Ingram v. Kubik*, F.4th 1241, 1250 (11th Cir. 2022). If the officers were acting within their discretionary authority, the burden shifts to the plaintiff to demonstrate that (1) "the defendant violated a constitutional right" and (2) "the violation was clearly established." *Christmas v. Harris County*, 51 F.4th 1348, 1354 (11th Cir. 2022) (quotation marks omitted).

Because the parties do not dispute that the officers were acting within their discretionary authority, the burden shifts to Ms. Scott to demonstrate that (1) "the defendant violated a constitutional right" and (2) that the right "was clearly established." *Christmas*, 51 F.4th at 1354 (quotation marks omitted). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019).

### i.   *Violation of Constitutional Rights*

The Court turns now to the first prong: whether Detective Perez violated Ms. Scott's constitutional rights. Arrests constitute seizures for Fourth Amendment purposes and are unreasonable unless supported by probable cause. *See Davis v. Williams*, 451 F.3d 759, 764 n.8 (11th Cir. 2006); *Morris v. Town of Lexington*, 748 F.3d 1316, 1324 (11th Cir. 2014). It is well established that probable cause is an absolute bar to federal false arrest claims. *Crocker v. Beatty*, 995 F.3d 1232, 1245 (11th Cir. 2021). An arrest is supported by probable cause where "a reasonable officer could conclude—considering all of the surrounding circumstances, including the plausibility of the explanation itself—that there was a 'substantial chance of criminal activity.'" *District of Columbia v. Wesby*, 583 U.S. 48, 49 (2018) (quoting *Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983)); *see Washington v. Howard*, 25 F.4th 891, 902 (11th Cir. 2022). The Eleventh Circuit has held that an officer may be shielded by qualified immunity if he had even "arguable probable cause." *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Circuit 2010). "In the false arrest context, arguable probable cause exists where 'a reasonable officer, looking at the entire legal landscape at the time of the arrests, could have interpreted the law as permitting the arrests.'" *McCabe*, 84 F.4th at 1236-37 (quoting *Garcia v. Casey*, 75 F.4th 1176, 1186 (11th Cir. 2023)). However, the Court must conduct this inquiry "in light of the specific context of the case, not as a broad general proposition." *Id.* at 1237 (quoting *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021). "Importantly, whether an officer possesses either actual or arguable probable cause 'depends on the elements of the alleged crime and the operative fact pattern.'" *Id.* (quoting *Brown*, 608 F.3d at 735).

### a. Trafficking in Cocaine

Applying these principles to this case, Ms. Scott was charged with trafficking in cocaine. Under Florida law, an individual commits the offense of trafficking in cocaine if she is "knowingly in actual or constructive possession of 28 grams or more of cocaine." Fla. Stat. § 893.135(b)(1). Here, Defendants do not dispute that Ms. Scott was not in actual possession of 28 grams or more of cocaine. Accordingly, constructive possession is the operative metric for determining whether Detective Perez had arguable probable cause to arrest Ms. Scott. Constructive possession exists "when a person has knowledge of the thing possessed coupled with the ability to maintain control over it or reduce it to his physical possession even though he does not have actual personal domain." *United States v. Derose*, 74 F.3d 1177, 1185 (11th Cir. 1996).

Detective Perez argues that he "made at least eleven observations giving rise to probable cause that drug dealing was occurring in the Property." ECF No. 31 at 11. These observations include the controlled drug buys, the layers of security required for a visitor to gain entry, and the cocaine and paraphernalia found on the day of the arrest that was consistent with the evidence acquired during the controlled buys. Ms. Scott responds that qualified immunity is unconstitutional.[2] She further argues that Detective Perez did not have arguable probable cause to arrest her for any offense and therefore qualified immunity does not apply. To support her argument, Ms. Scott notes that her behavior gave no indication that she was the woman who sold cocaine to the confidential informant. Further, she argues that it was not reasonable for the officers to presume that only trusted members of the drug dealing operation had access to the Property because the confidential informant entered the property with no reported issues.

---

[2] Ms. Scott is free to preserve this argument for appeal. However, Ms. Scott correctly acknowledges that "qualified immunity is the law, and as a lower court, this Court must follow it." ECF No. 42, n.1. Accordingly, the Court undertakes a qualified immunity analysis.

Ms. Scott does not dispute any of the observations that Detective Perez made which he claims gave rise to probable cause to arrest her. However, the Court is not convinced that Detective Perez's undisputed observations demonstrate that he had arguable probable cause to arrest Ms. Scott based on constructive possession. Detective Perez made observations regarding the paraphernalia, the security, the consistency of the narcotics found during the raid with those acquired during the controlled buy, and the fact that none of the patrons admitted ownership. However, the only observation Detective Perez recites as to *Ms. Scott* is the fact that she was the patron closest to the restroom where the cocaine was found. This fact does not create arguable probable cause that Ms. Scott had "knowledge of the thing possessed coupled with the ability to maintain control over it or reduce it to [her] physical possession." *Derose*, 74 F.3d at 1185 (11th Cir. 1996). Detective Perez attempts to close this gap by arguing that because there were only four patrons in the property, he was able to infer a common enterprise, and therefore had probable cause to arrest all patrons, although no other patrons were arrested.

Detective Perez relies heavily on *Maryland v. Pringle*, 540 U.S. 366 (2203),[3] to assert that a common enterprise could be inferred. *Pringle*, however, centers on a traffic stop that yielded multiple baggies of cocaine in the stopped vehicle. 540 U.S. at 368. Of the three men in the car, none admitted ownership, and all three were placed under arrest. *Id.* The Court held that it was reasonable for the officer "to infer a common enterprise among the three men" because "[t]he quantity of drugs and the cash in the car indicated the likelihood of drug dealing, an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him." *Id.* at 373.

---

[3] Detective Perez likewise relies on *J.J. v. States*, 312 So. 3d 116 (Fla. 3d DCA 2020), and urges the Court that *J.J.* is controlling law. However, Ms. Scott's False Arrest claim is based on federal law. Accordingly, *J.J.* does not control.

The facts of *Pringle* and the facts of this case significantly differ. Here, Ms. Scott's arrest did not occur in a car, an extremely small space where a common enterprise could be reasonably be presumed. Rather, it occurred at the property in question, the nature of which is subject to genuine dispute. The parties fiercely dispute whether the property constitutes a public or private space. Detective Perez claims that the confidential informant indicated that the property was private and further that his own experience gave rise to this inference. Ms. Scott responds that based on the Defendants' statement of undisputed material facts, the confidential informant did not have to show he was a trusted member of the alleged drug enterprise and was able to enter without issue. While "the facts and circumstances within law enforcement's knowledge," matter for purposes of the probable cause inquiry, Detective Perez cannot point to anything in the factual record that demonstrates the property was private beyond his own testimony. In any event, the facts surrounding the nature of the property are material to the determination of whether Detective Perez had arguable probable cause to believe Ms. Scott was in constructive possession of the cocaine. Because it is Detective Perez's burden to show an absence of a genuine issue as to any material fact, and because reasonable minds could differ as to whether the property was public or private, the Court finds that Ms. Scott prevails on the first prong.

### b. Selling Cocaine to the Confidential Informant

Detective Perez alternatively argues that even if he did not have arguable probable cause to arrest Ms. Scott for trafficking in cocaine, he had arguable probable cause to arrest Ms. Scott for selling cocaine to the confidential informant during the controlled buy that occurred on September 11. In Florida, the sale of any amount of cocaine is a felony. Fla. Stat. § 893.13(1)(a).

The parties dispute whether the confidential informant identified Ms. Scott to Detective Perez on the day of her arrest. Beyond his own testimony, Detective Perez cannot point to anything

in the factual record that demonstrates the confidential informant singled out Ms. Scott. Detective Perez did not include the confidential informant's alleged identification of Ms. Scott in his arrest affidavit, nor did he include it in his offense incident report. ECF No. 41-2; 41-4; 29-6 at 35: 4-19. Further, the confidential informant is unable to testify as to the alleged identification as he has since died. ECF No. 29-6 at 9:19-24; 13:14-19. Accordingly, for the reasons described above, Ms. Scott prevails on the first prong.

### i. *Clearly Established Constitutional Rights*

The Court now turns to the second prong: whether Ms. Scott's alleged constitutional right was clearly established. A plaintiff may demonstrate that a right is clearly established if she shows: (1) "that a materially similar case has already been decided, giving notice to the police;" (2) "that a broader, clearly established principle should control the novel facts in this situation;" or (3) "this case fits within the exception of conduct which so obviously violates [the] constitution that prior case law is unnecessary." *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005). When a plaintiff attempts to show that a right was clearly established, "the salient question is whether the state of the law at the time of the incident gave the [officer] fair warning that his conduct was unlawful." *Powell v. Snook*, 25 F.4th 912, 920 (11th Cir. 2022) (cleaned up). Of the three available methods by which to prove this, Ms. Scott chose the first method: "that a materially similar case has already been decided, giving notice to the police." Mercado, 407 F.3d at 1159. Ms. Scott solely relies on *Ybarra v. Illinois*, 444 U.S. 85 (1979) as a materially similar case that should have put Detective Perez on notice that his conduct was unlawful.

Based on the distinguishing facts surrounding this case, the Court finds that *Ybarra*, the only case Ms. Scott relies on in her response, did not put Detective Perez on notice that his conduct was unlawful. In *Ybarra*, a confidential informant indicated to police that drugs were to be sold at a tavern by the tavern's bartender. 444 U.S. at 87-88. Based upon this information, a warrant was

issued, authorizing the search of the tavern and the bartender and authorizing police to search for evidence and contraband related to the alleged crime. *Id.* at 88. When executing the warrant, officers conducted a pat down of all patrons for weapons. *Id.* An officer conducted two pat-downs of Ybarra, retrieved a cigarette pack from his pants pocket, where he found heroin. *Id.* at 89. The Supreme Court held that the search of Ybarra and the subsequent seizure of what was in his pocket ran afoul of the Fourth and Fourteenth Amendments. *Id.* at 90-96. Importantly, the Court found that although the warrant "gave the officers authority to search the premises and to search [the bartender], it gave them no authority whatever to invade the constitutional protections possessed individually by the tavern's customers." *Id.* at 92.

The Court agrees with Detective Perez that the facts and circumstances surrounding *Ybarra* are inapposite to the facts and circumstances surrounding Ms. Scott's arrest. In *Ybarra*, there were anywhere from nine to thirteen patrons on the premises. *Id.* at 88. Here, there were merely four patrons. ECF No. 30, ¶ 66. In *Ybarra*, the confidential informant indicated that the bartender offered to sell him heroin and, on several occasions, had paraphernalia consistent with heroin use on or near his person. 444 U.S. at 88. Here, the confidential informant was actually sold cocaine by two individuals on the premises on two separate occasions. ECF No. 30, ¶¶ 22-26, 34-40. Moreover, in *Ybarra*, the search warrant complaint "did not allege that the bar was frequented by persons illegally purchasing drugs," and "did not state that the informant had even seen a patron of the tavern purchase drugs from [the bartender] or from any other person." 444 U.S. at 90. Here, Detective Perez's affidavit described the controlled buys, thus indicating that the bar was frequented by persons illegally purchasing drugs and further indicating that the informant had himself purchased drugs from two individuals on the premises. ECF No. 30, ¶ 41. As such, *Ybarra*

could not have reasonably put Detective Perez on notice that his conduct was unlawfully violating Ms. Scott's established constitutional rights.

Because Ms. Scott bears the burden of satisfying both prongs, and because Ms. Scott was unable to prove that this right was clearly established, the Court must grant qualified immunity to Detective Perez from Ms. Scott's false arrest claim.

### B.  Count III: Excessive Force as to Officer Menocal

Ms. Scott alleges that under 42 U.S.C. § 1983, her Fourth Amendment rights were violated when Officer Menocal pushed her to the ground as she was exiting the property. Officer Menocal argues that he is entitled to qualified immunity from this claim because the push was a *de minimis* use of force.

#### a.  Excessive Force Law

Excessive force claims are analyzed under the Fourt Amendment's "objective reasonableness" standard, which judges the "'reasonableness' of a particular use of force . . . from the perspective of a reasonable officer on the scene." *Graham v. Connor*, 490 U.S. 386, 395-96 (1989). Such claims call for "a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1085)) (internal quotation marks omitted). "[P]roper application" of this standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. When determining whether force was excessive and unreasonable, courts review the factors described above "from the perspective

of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009).

The Eleventh Circuit, has held that the use of *de minimis* force, "without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000). And when defendant officers raise qualified immunity in excessive force cases, the defense "applies unless application of the standard would inevitably lead every reasonable officer in [the position of the defendant officer] to conclude the force was unlawful." *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993), *modified* 14 F.3d 583 (11th Cir. 1994). As stated above, because the parties do not dispute that the officers were acting within their discretionary authority (ECF No. 41 ¶ 90), Ms. Scott bears the burden to demonstrate that (1) Officer Menocal violated a constitutional right" and (2) that the right "was clearly established." *Christmas*, 51 F.4th at 1354 (quotation marks omitted).

### b.    Officer Menocal's Use of Force

Officer Menocal argues that his use of force was reasonable and permissible because the use of force is authorized when an officer is detaining an occupant during the execution of a search warrant, particularly when the place to be searched is known to be involved in the distribution of controlled substances. Specifically, Officer Menocal asserts that he was permitted to push Ms. Scott because every other occupant had yet to emerge from inside, and Ms. Scott's presence in the doorway created a safety risk for officers by impeding their line of sight into the structure. Ms. Scott responds that the push was unreasonable because she was not resisting, was not violent nor threatening, and she had not committed any crime. Ms. Scott points to the fact that she walked outside of the property with her hands above her head, and thus, Officer Menocal's force amounted to excessive force in violation of the Fourth Amendment.

The Court will first review the factors outlined in *Graham* and the material facts the parties agree to. As for the severity of the crime committed, when Ms. Scott was pushed to the ground, she was not accused of or suspected of any crime, let alone a violent one. *See Garner*, 471 U.S. at 11. Officer Menocal acknowledges that his use of force was related to detaining Ms. Scott as an occupant of the place to be searched. As for the threat posed and the level of resistance, the parties agree that Ms. Scott was not aggressive nor did she resist when exiting the building, as she had her hands above her head. ECF No. 30, ¶ 58. These considerations all weigh in favor of Ms. Scott.

Next, the Court must balance the interests of Ms. Scott in her Fourth Amendment rights with the countervailing governmental interests. *Graham*, 490 U.S. at 396. When executing a search warrant, officers are authorized to detain occupants of the place to be searched – an authority that is predicated on "safety considerations." *Bailey v. United States*, 568 U.S. 186, 195 (2013). Inherent in this authority to detain occupants "is the authority to use reasonable force to effectuate the detention." *Croom v. Balkwill*, 645 F.3d 1240, 1251 (11th Cir. 2011) (quoting *Muehler v. Mena*, 544 U.S. 93, 98-99 (2005)). Officers have such authority because executing search warrants creates a serious risk of harm to both the officers and nearby individuals. This risk becomes increasingly serious when narcotics are involved. *See United States v. Hromada*, 49 F.3d 685, 689 (11th Cir. 1995 ("Guns and violence go hand-in-hand with illegal drug operations.").

The parties agree that Ms. Scott was the first person to exit the building. ECF No. 30, ¶ 64; ECF No. 41, ¶ 64. Further, Ms. Scott does not dispute that "[a]llowing a person to remain in the doorway creates a safety risk for officers by impeding their line of sight into the structure." ECF No. 30, ¶ 63; ECF No. 41, ¶ 63. Nevertheless, Ms. Scott contends that because she was compliant and was not suspected of committing any crime, she did not pose a threat to the officers such that pushing her to the ground was unnecessary and unreasonable. The Court disagrees. In balancing

Ms. Scott's interest with those of Officer Menocal, and all other officers present at the scene of her arrest, the Court finds that the interests of the government outweigh the interests of Ms. Scott.

Plaintiff directs the Court's attention to several Eleventh Circuit cases in support of her contention that Officer Menocal violated her constitutional rights. However, the decisions she cites are not analogous to the facts and circumstances surrounding this case. The defendant in *Saunders v. Duke* brought forth an excessive force claim because "his head was 'slammed' against the pavement," force which is far more severe than that which Ms. Scott faced when she landed on her knees. 766 F.3d 1262, 1265 (11th Cir. 2014). In *Fils v. City of Aventura*, the officer in question tased the defendant without warning after the defendant raised his hands and took a step away from the officer. 647 F.3d 1272, 1289. Again, the force used by Officer Menocal does not rise to the level of force used in *Fils*. In *Patel v. City of Madison*, the arresting officer used a leg sweep with "unusual alacrity and horsepower" that caused "significant" and "severe" injuries that would "be felt for a lifetime." 959 F.3d 1330, 1343, n.5 (11th Cir. 2020). Here, Ms. Scott has not alleged that she suffered any lasting injuries nor do the facts suggest that Officer Menocal used comparable force. And perhaps, most importantly, none of the above cases involved the execution of a search warrant for narcotics, a situation which, as the Court explained above, provides unique safety concerns for officers. *See Saunders*, 766 F.3d at 1254-55 (involving a defendant selling undercover officers oxycodone pills); *Fils*, 647 F.3d at 1276 (involving an arrest of alleged breach of the peace); *Patel*, 959 F.3d at 1333 (involving officers responding to a call about an unfamiliar man roaming the streets).

For the reasons stated above, the Court finds that the government interests at stake here are strong. Officer Menocal and the other officers were not required to wait for Ms. Scott to exit the building without using force. Officer Menocal could not have known whether there was a threat

of serious danger inside of the property given that the property was used for the distribution of cocaine. Further, the Court cannot find, based on the cases cited by Ms. Scott, that clearly established law prevented Officer Menocal from pushing her in the manner used here. As described above, those cases present facts so distinct from this case that Officer Menocal could not have been put on notice that he was violating a clearly established right.

Officer Menocal cites to *Croom v. Balkwill*, 645 F.3d 1240 (11th Cir. 2011) as the most analogous precedential decision and urges the Court to follow a similar analysis. Ms. Scott argues that because she was compliant, unlike the defendant in *Croom*, reliance on *Croom* is misplaced. *See* 645 F.3d at 1245. However, the Eleventh Circuit did not rely on Croom's compliance in issuing its holding. Rather, the Eleventh Circuit focused (1) on the fact that Croom was "in the front yard of a house known by law enforcement to be involved in the distribution of controlled substances at the time it was searched pursuant to a warrant," (2) the authority of the officers to exercise "unquestioned command of the situation" while securing the home, and (3) the fact that Croom "was subject to no further exercise of force during her detention" once the premises was deemed secure. *Croom*, 645 F.3d at 1251-53. Just as in *Croom*, Ms. Scott was inside of a property known by police to be involved in the distribution of controlled substances, the officers had authority to use force to execute the search warrant, and the police did not subject Ms. Scott to any further exercise of force during her detention once the property was deemed secure. And just as in *Croom*, although the Court is "skeptical that the force alleged was truly necessary under the circumstances," it nevertheless "cannot find a constitutional violation based on its usage." *Id.* at 1252. Accordingly, the Court finds that Officer Menocal's use of force was *de minimis* and thus, he is entitled to qualified immunity from Ms. Scott's excessive force claim. *See, e.g.*, *Nolin v. Isbell*, 207 F.3d 1253, 1258 n.4 (11th Cir. 2000) (holding that the relevant facts fell "within the

ambit of the de minimis force principle" when plaintiff ended up only with "minor bruising [that] quickly disappeared without treatment"); *Gold v. City of Miami*, 121 F.3d 1442, 1446-47 (11th Cir. 1997) (granting qualified immunity after concluding that "[t]he minor nature of [plaintiff's] injury reflects that minimal force was used").

## C. Count IV: Unlawful Search and Seizure as to Detective Perez

Ms. Scott alleges that under 42 U.S.C. § 1983, her Fourth Amendment rights were violated when Detective Perez searched her vehicle. In her complaint, Ms. Scott alleged that she did not consent to Detective Perez searching her vehicle, that he entered her vehicle without a search warrant or other legal justification, and that her vehicle was not subject to the search warrant because it was not within the curtilage of the property. Detective Perez responds that because the search warrant authorized police to search the property and the curtilage thereof, including all vehicles within the curtilage, he did not violate Ms. Scott's constitutional rights. Ms. Scott now argues that the search warrant was deficient because it lacked particularity with respect to her. In response, Detective Perez states that such a claim is now barred because it was not included in the complaint, and further that the warrant was valid.

"[T]he Fourth Amendment requires that warrant applications contain sufficient information to establish probable cause." *Holmes v. Kucynda*, 321 F.3d 1069, 1083 (11th Cir. 2003). Where, as here, "the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or . . . in 'objective good faith.'" *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quoting *United States v. Leon*, 468 U.S. 897, 922-23 (1984)). However, "the fact that a neutral magistrate has issued a warrant authorizing the allegedly unconstitutional search or seizure does not end the inquiry into objective

reasonableness." *Id.* at 547 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). A suit is nevertheless permitted when "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Id.* (quoting *Malley*, 475 U.S. at 341). In other words, the Plaintiff must show that "a reasonably well-trained officer would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley*, 475 U.S. at 345. Alternatively, the Plaintiff may show that "a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)).

Detective Perez argues that because Plaintiff failed to raise the issue of deficiency in her complaint, she cannot raise it in her brief opposing summary judgment. However, because the Court finds below that the warrant was valid, it need not address this issue.

Ms. Scott argues that the warrant was invalid because the search warrant affidavit lacked particularity with respect to her. She cites *Ybarra* as supporting this assertion. In *Ybarra*, the Supreme Court held that "[w]here the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person." 444 U.S. 85 at 91. While this is true, *Ybarra* discusses what is required for officers to search or seize a person, not what is required for officers to search vehicles. Further, in *Ybarra*, the warrant made no mention of searching the patrons of the tavern but the officers nevertheless frisked Ybarra twice. Here, Ms. Scott does not claim she was unlawfully searched or frisked in violation of the warrant. Rather, the warrant authorized the police to search the property "and the curtilage thereof, including all vehicles and/or temporary structures within the curtilage." ECF No. 41-5.

Moreover, *Ybarra* does not permit a plaintiff to assert that a warrant was deficient without factual support. Beyond claiming in one sentence of her response that the warrant lacked

particularity, Ms. Scott offers no other explanation as to why the Court should find that Judge Wolfson erred in issuing the warrant. Ms. Scott does not argue that "a reasonably well-trained officer would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley*, 475 U.S. at 345. Nor does she allege that Detective Perez, or any other reasonably well-trained officers on site, "would have known that the search was illegal despite the magistrate's authorization." *Id.* (quoting *Leon*, 468 U.S. at 922). In addition, Ms. Scott does not dispute that her vehicle was parked within the curtilage of the property. *See* ECF No. 30, ¶ 86; ECF No. 41. ¶ 86; ECF No. 42 at 15-17. And because the valid warrant explicitly authorized Detective Perez to search vehicles within the curtilage of the property, Ms. Scott has failed to meet her burden of showing that a well-established constitutional right was violated when Detective Perez searched her vehicle. Accordingly, the Court grants Detective Perez's motion for summary judgment on this issue and finds that the warrant was valid and that Detective Perez must be afforded qualified immunity from Count IV.

**D.  Count IV-B: State Battery as to Officer Menocal and Count V: State Battery as to Miami-Dade County**

Ms. Scott also brings a state law claim against Officer Menocal for battery, arising out of the same facts discussed above regarding the excessive force claim. Officer Menocal argues that he is entitled to qualified immunity from this claim because his use of force was reasonable. Ms. Scott argues that the use of force was unreasonable under the circumstances because she was neither resisting nor suspected of a crime.

In Florida, battery requires a showing of (1) "inten[t] to cause a harmful or offensive contact," and (2) a resulting "offensive contact with the person of the other." *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. 3d DCA 1996). In the context of an arrest, "[a] battery claim for excessive force is analyzed by focusing upon whether the amount of force used was reasonable

under the circumstances." *Id.* "If excessive force is used in an arrest, the ordinarily protected use of force by a police officer is transformed into a battery." *Id.* But, "ordinary incidents of [an] arrest . . . do not give rise to an independent tort." *Lester v. City of Tavares*, 603 So. 2d 18, 19-20 (Fla. 5th DCA 1992).

Ms. Scott's battery claim is no more persuasive than her § 1983 claim of excessive force. As the Court explained above, Officer Menocal's push was reasonable given the risk of harm inherent in executing search warrants related to narcotics. Ms. Scott was standing in the doorway, obstructing the officers' vision into the property and Officer Menocal had a strong interest in securing the premises. Florida applies a presumption of good faith to law enforcement conduct, holding officers liable only when the force used was "clearly excessive." *Sanders*, 672 So.2d at 47; *see Davis*, 451 F.3d at 768. Accordingly, the Court must grant Officer Menocal's motion for summary judgment on Count IV-B. *See Baxter v. Roberts*, 54 F.4th 1241, 1272-73 (affirming judgment on state law battery claim where officer's use of force was "reasonable under the circumstances). Likewise, Miami-Dade County may not be held liable when Officer Menocal acted reasonably. As such, the Court grants summary judgment to Miami-Dade County on Count V.

**E.  Count VII: State False Arrest as to Miami-Dade County Based on the Actions of Detective Perez**

Ms. Scott's final claim is a state law claim for false arrest as to Miami-Dade County based on the actions of Detective Perez. The tort of false arrest requires proof of "1) the unlawful detention and deprivation of liberty of a person 2) against that person's will 3) without legal authority or 'color of authority' and 4) which is unreasonable and unwarranted under the circumstances." *Montejo v. Martin Mem'l Med. Ctr. Inc.*, 935 So.2d 1266, 1268 (Fla. 4th DCA 2006).

As discussed above, Detective Perez was not on notice that he was violating a clearly established right when he arrested Ms. Scott. Accordingly, Ms. Scott's arrest was not "unreasonable" under the circumstances. Miami-Dade County may not be held liable when Detective Perez acted reasonably. Accordingly, the Court grants summary judgment as to Miami-Dade County on Count V.

<h3 style="text-align:center">VI. Conclusion</h3>

Defendants' Motion for Summary Judgment (**D.E. 31**) is **GRANTED**. All pending motions are **DENIED AS MOOT**. The Clerk is directed to close the case.

DONE AND ORDERED in Chambers at Miami, Florida, this _____ 23ʳᵈ of January 2025.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record